```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------X
                                        :
TREELINE INVESTMENT PARTNERS, LP and    :
DAVID JAROSLAWICZ,                      :
                        Plaintiffs,     :     07 Civ. 1964 (DLC)
                                        :
                -v-                     :     OPINION & ORDER
                                        :
GARY KOREN and KILLY KOREN,             :
                        Defendants.     :
                                        :
----------------------------------------X
```

Appearances:

For Plaintiffs:
Elizabeth Eilender
Law Office of Elizabeth Eilender
150 William Street, 19th Floor
New York, NY 10038

For Defendants:
Thomas E. Zemaitis
Pepper Hamilton LLP
3000 Two Logan Square
18th and Arch Streets
Philadelphia, PA 19103

DENISE COTE, District Judge:

   Plaintiffs Treeline Investment Partners, LP ("Treeline") and David Jaroslawicz ("Jaroslawicz") bring this action against defendants Gary Koren ("Koren") and Killy Koren ("Killy"), who are husband and wife, for fraud and breach of contract in relation to two sales of shares of a company in 2005. Defendants have filed a motion to dismiss this action for lack of personal jurisdiction under Rule 12(b)(2), Fed. R. Civ. P.; for insufficiency of service of process under Rule 12(b)(4); for

failure to state a claim upon which relief can be granted under Rule 12(b)(6); and for failure to plead fraud with particularity as required by Rule 9(b).  For the following reasons, the defendants' motion is denied.

## Background

The following facts are undisputed or taken from the complaint, unless otherwise noted.  Defendant Koren is an Israeli domiciliary and the chairman and CEO of SpaceLogic Ltd. ("SpaceLogic"), an Israeli company involved in airport security.  In at least one meeting[1] in late 2004 and 2005, Koren, who was seeking to raise money, made representations regarding SpaceLogic to plaintiff Jaroslawicz, a New York resident, and Sean Deson ("Deson"), the person who makes investment decisions for plaintiff Treeline, a Delaware limited partnership with principal place of business in New York.[2]  Koren represented to

---

[1] Koren states in his declaration in support of the motion to dismiss that there was only "a single negotiating session" in New York.  According to Jaroslawicz's declaration, however, Koren made multiple visits to New York to discuss investment issues, and submits building sign-in records in support.  Koren claims that plaintiffs have failed to connect these visits with their causes of action or to specific legal principles that would support jurisdiction, and admits to only a single negotiation session in New York.  Koren does, however, admit to negotiations with plaintiffs by telephone, fax, and email between Israel and New York.

[2] The complaint does not state the citizenship of the members of Treeline.  "[F]or purposes of establishing diversity, a partnership has the citizenship of each of its partners."

Jaroslawicz and Deson that SpaceLogic had a solid legacy business of numerous customers with approximately $4-5 million a year in revenue; that a contract with the United States Transportation Security Administration ("TSA") was imminent; that SpaceLogic was professionally managed; and that its new technology would generate $2-3 million a year in revenue. Furthermore, Koren represented that if Deson and Jaroslawicz assisted him in raising money, SpaceLogic could establish a United States infrastructure and add staff for United States sales and marketing.

Based on Koren's representations, Treeline and Jaroslawicz each purchased SpaceLogic shares on May 11, 2005, for a total of $250,000 and $349,000, respectively.  According to the complaint, however, Koren's representations were deliberately false: There was no legacy business or TSA contract; the company was not being properly managed; and in fact, Koren and other executives were stealing money from the company.  Furthermore, Koren never revealed that he was seeking to raise money for personal use, and that he had previously been involved in a bribery and corruption scandal in Israel involving pay-offs. Plaintiffs' first cause of action for fraudulent inducement,

---

Herrick Co., Inc. v. SCS Commc'ns, Inc., 251 F.3d 315, 322 (2d Cir. 2001).  If any of the members of Treeline are not United States citizens and residents, then there is no complete diversity in this case against the two foreign defendants.  The parties shall be prepared to address the issue of subject matter jurisdiction at the initial conference.

which is only against Koren, claims that but for Koren's fraudulent statements and misrepresentations, plaintiffs would not have purchased the shares from SpaceLogic, and seeks to recover the purchase price and punitive damages.

Following the May purchase, Koren represented to Jaroslawicz and Deson in June or July 2005 that the company was doing well, that more contracts were being entered into, and that he would give them an opportunity to invest further by purchasing shares he personally owned at a discount.  "Upon information and belief, these shares were owned by Koren and his wife," Killy, who is also an Israeli domiciliary.  Koren also represented that the shares would be registered.  Based on these representations, Treeline and Jaroslawicz purchased 150,000 shares each, for $48,000 each.  The defendants never delivered these shares to the plaintiffs, and Koren never arranged for these shares to be registered.  Plaintiffs' second cause of action against both Korens claims that because of the defendants' breach of contract, plaintiffs are entitled to recover the purchase price of $48,000 plus interest.

Plaintiffs' complaint was originally filed on November 15, 2006, in New York state court.  Defendants removed the action to federal court on March 7, 2007, based on diversity of citizenship, and filed this motion to dismiss a week later.

Discussion

Each of the four grounds that defendants raise in support of their motion to dismiss is considered here in turn.  None of them succeeds.

I. Personal Jurisdiction

Plaintiffs argue that there is personal jurisdiction over the defendants pursuant to New York's Civil Practice Law and Rules Section 302(a) ("CPLR 302(a)").[3]  In a diversity case, the issue of personal jurisdiction must be determined according to the law of the forum state.  D.H. Blair & Co., Inc., v.

---

[3] CPLR 302(a) provides:

> As to a cause of action arising from any of the acts enumerated in this section, a court may exercise personal jurisdiction over any non-domiciliary . . . who in person or through an agent:
> 1. transacts any business within the state or contracts anywhere to supply goods or services in the state; or
> 2. commits a tortious act within the state, except as to a cause of action for defamation of character arising from the act; or
> 3. commits a tortious act without the state causing injury to person or property within the state, except as to a cause of action for defamation of character arising from the act, if he
>     (i) regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the state, or
>     (ii) expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce . . . .

CPLR 302(a).

Gottdiener, 462 F.3d 95, 104 (2d Cir. 2006).  A district court may exercise jurisdiction over any defendant who would be subject to the jurisdiction of a court of general jurisdiction in the state in which the district court is located.  Fed. R. Civ. P. 4(k)(1)(a); Wiwa v. Royal Dutch Petroleum Co., 226 F.3d 88, 94 (2d Cir. 2000).  Any exercise of personal jurisdiction over the defendants must also comport with the Due Process Clause.  D.H. Blair, 462 F.3d at 104; Grand River Enters. Six Nations, Ltd. v. Pryor, 425 F.3d 158, 165 (2d Cir. 2005).  "In order to survive a motion to dismiss for lack of personal jurisdiction, a plaintiff must make a prima facie showing that jurisdiction exists."  Best Van Lines, Inc. v. Walker, 04-3924-cv, slip op. at 5, --- F.3d ----, 2007 WL 1815511 (2d Cir. June 26, 2007) (citation omitted).  Where, as here, there has been no discovery, the plaintiff need only make "legally sufficient allegations of jurisdiction" through its pleading and affidavits in order to survive a motion to dismiss.  In re Magnetic Audiotape Antitrust Litig., 334 F.3d 204, 206 (2d Cir. 2003) (per curiam).

A. CPLR 302(a)(1)

The plaintiffs rely on several provisions of New York's long arm statute, but it is only necessary to address one of those.  In order to establish specific jurisdiction under CPLR

6

302(a)(1), courts must decide "(1) whether the defendant 'transacts any business' in New York and, if so, (2) whether this cause of action 'arises from' such a business transaction." Best Van Lines, slip op. at 15 (citation omitted). Transacting business has been defined as "purposeful activity -- 'some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.'" Id. at 16 (citing McKee Elec. Co. v. Rauland-Borg Corp., 229 N.E.2d 604, 607 (N.Y. 1967)). This inquiry is a fact-specific one, and "[c]ourts look to the totality of the defendant's activities within the forum." Id. at 15 (citation omitted). New York courts have held that a claim "arises from" a particular transaction when there is "some articulable nexus between the business transacted and the cause of action sued upon, or when there is a substantial relationship between the transaction and the claim asserted." Sole Resort, S.A. de C.V. v. Allure Resorts Mgmt., LLC, 450 F.3d 100, 103 (2d Cir. 2006) (citation omitted); see also Agency Rent A Car Sys., Inc. v. Grand Rent A Car Corp., 98 F.3d 25, 31 (2d Cir. 1996).

In non-defamation cases, "proof of one transaction, or a single act, in New York is sufficient to invoke long-arm jurisdiction, even though the defendant never enters New York." Best Van Lines, slip op. at 18-19 (citation omitted and

7

collecting cases).  Furthermore, while telephone contacts between a nondomiciliary defendant and a New York party are insufficient by themselves to confer jurisdiction under CPLR 302(a)(1), Fiedler v. First City Nat'l Bank, 807 F.2d 315, 317-18 (2d Cir. 1986), a nondomiciliary defendant will be subject to jurisdiction if the defendant uses these telephone communications deliberately to "project" himself into business transactions occurring within the state.  See, e.g., Parke-Bernet Galleries, Inc. v. Franklyn, 256 N.E.2d 506, 508 (N.Y. 1970).

The plaintiffs have carried their burden at this early stage of the litigation of showing that there is jurisdiction over Koren.  Koren was engaged in purposeful activity in New York by negotiating the sales contracts with the New York plaintiffs, and plaintiffs' claims arise out of those business transactions.  It is undisputed that Koren made at least one visit to New York to negotiate the contracts, and Koren himself admits to negotiations via telephone, email, and fax with the plaintiffs in New York.  Although plaintiffs do not claim that the actual contracts were executed in New York, plaintiffs have sufficiently shown that Koren purposefully directed the transactions at the two New York residents and negotiated the transactions at least partly in New York.

Koren counters that only a single negotiating session occurred in New York, and that his other visits to New York which plaintiffs claim occurred were "mere solicitation" of business. "[M]ere solicitation of business within the state does not constitute the transaction of business within the state, unless the solicitation in New York is supplemented by business transactions occurring in the state." O'Brien v. Hackensack Univ. Med. Ctr., 760 N.Y.S.2d 425, 427 (App. Div. 2003).[4]  In this case, plaintiffs have alleged a connection between the solicitation of business and the transactions at issue, which occurred at least in part within this state. Therefore, plaintiffs have made a prima facie showing under CPLR 302(a)(1) of personal jurisdiction over Koren.

Personal jurisdiction over Killy under CPLR 302(a)(1) is less clear. CPLR 302(a)(1) covers acts committed through agents, and plaintiffs believe that Killy owned the shares that were sold in the second sale. If Koren was acting as her agent when he transacted this business with the plaintiffs, then there is jurisdiction over Killy. Defendants deny that Killy owned any shares of SpaceLogic, therefore suggesting that there was no agency relationship. This assertion implicates the merits of

---

[4] Koren cites an unpublished Second Circuit opinion to support its claim that "mere solicitation" is not "transaction of business." Girl Scouts of the United States v. Steir, 102 Fed. Appx. 217, 219 (2d Cir. 2004). The situation here is clearly distinguishable from the limited contact in Girl Scouts, which involved a website that could be accessed from the forum state.

the second claim.  Since the complaint pleads Killy's ownership only on information and belief, discovery is necessary to resolve this issue.  Plaintiffs have in fact requested discovery on the issue of personal jurisdiction in the event the Court finds an insufficient factual record.  Discovery is granted as to the limited issue of personal jurisdiction over Killy based on an alleged ownership of the shares.

B. Due Process

If jurisdiction exists under New York law, then it must be determined "whether asserting jurisdiction . . . would be compatible with requirements of due process established under the Fourteenth Amendment."  Best Van Lines, slip op. at 6.  To find specific jurisdiction, the Court must determine that "the defendant has 'purposefully directed' his activities at residents of the forum, and the litigation results from alleged injuries that 'arise out of or relate to' those activities." Burger King Corp. v. Rudzewicz, 471 U.S. 462, 472 (1985).  "The crucial question is whether the defendant has 'purposefully availed itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws, such that the defendant should reasonably anticipate being haled into court there.'"  Best Van Lines, slip op. at 7 (citing Burger King, 471 U.S. at 474-75).  This requirement

10

"ensures that a defendant will not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts." Burger King, 471 U.S. at 475; see also Agency Rent A Car Sys., 98 F.3d at 32.

The second part of the due process personal jurisdiction test is determining the reasonableness of the exercise of jurisdiction. In undertaking this analysis, the Supreme Court has identified the following factors:

> (1) the burden that the exercise of jurisdiction will impose on the defendant; (2) the interests of the forum state in adjudicating the case; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of the controversy; and (5) the shared interest of the states in furthering substantive social policies.

Metropolitan Life Ins. Co. v. Robertson-Ceco Corp., 84 F.3d 560, 568 (2d Cir. 1996) (citing Asahi Metal Indus. Co. v. Superior Court of Cal., 480 U.S. 102, 113-14 (1987)).

Plaintiffs have sufficiently alleged that Koren has purposefully availed himself of the privilege of conducting business in the forum state. The contracts at issue were negotiated between Koren's domicile and New York, during which Koren directed his business to New York by telephone, fax, and email, and through at least one visit to the state. Contrary to Koren's assertion that the only connection to New York is plaintiffs' residence or place of business, the transactions were partly negotiated in New York and specifically directed at

11

New York, and therefore there is a sufficient connection with the forum state.

Moreover, it is reasonable to exercise personal jurisdiction over Koren, and the defendants have not shown otherwise.  First, although litigating this case in New York will impose some burden on Koren as he lives in Israel, he has made several trips to New York in the past.  Second, New York has a great interest in adjudicating the case as it involves a New York resident and a company headquartered in New York, and a contract partially negotiated in New York.  Third, adjudicating this dispute in New York will help plaintiffs obtain convenient and effective relief as they are in New York.  Finally, New York and the United States have an interest in resolving this action involving shares sold to New York residents.

Because jurisdiction is satisfied over Koren under CPLR 302(a)(1), there is no need to consider jurisdiction under CPLR 302(a)(2) and (3).  Discovery is granted on the issue of jurisdiction over Killy under CPLR 302(a)(1), and since there are no claims against her arising out of a tort, CPLR 302(a)(2) and (3) cannot apply.

II. Service of Process

Koren claims that service of process was insufficient under the Hague Convention because Israel has objected to the use of

Article 10(b) and (c) of the Hague Convention, which was the method plaintiffs used.  Regardless of the merits of Koren's claims on Article 10(b) and (c), plaintiffs have since effected service under Article 10(a) of the Hague Convention, and have cured any defect that existed.

Rule 4(f)(1), Fed. R. Civ. P., permits service upon an individual defendant located in a foreign country "by any internationally agreed means reasonably calculated to give notice, such as those means authorized by the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents" ("Hague Service Convention").  Since Israel and the United States are both signatories to the Hague Service Convention, Nov. 15, 1965, [1969] 20 U.S.T. 361, T.I.A.S. No. 6638, service of process on a defendant in Israel is governed by the convention.  See, e.g., Burda Media, Inc. v. Viertel, 417 F.3d 292, 299-300 (2d Cir. 2005).  Article 10(a) of the Hague Service Convention permits service through mailing of "judicial documents, by postal channels, directly to persons abroad," provided that the destination state has not objected to this provision.  Hague Service Convention, art. 10(a).

Since Israel has not objected to Article 10(a) of the Convention, service through international registered mail remains an acceptable method of serving Koren, an individual defendant who resides in Israel.  See Ackermann v. Levine, 788

13

F.2d 830, 840 (2d Cir. 1986).[5] Despite the defects in plaintiffs' first attempt at service, they were cured by plaintiffs' second attempt on March 22, 2007 by mail. The second attempt was not untimely because Rule 4(m)'s 120-day limit does not apply to service pursuant to Rule 4(f).[6] Fed. R. Civ. P. 4(m). Furthermore, Koren does not dispute that he received actual notice of this lawsuit, and both service methods -- the first by personal service and the second by mail -- were reasonably calculated to provide such actual notice. Therefore, service of process was proper under the Hague Service Convention and provided sufficient notice.

---

[5] Koren cites Charas v. Sand Tech. Sys. Int'l, Inc., No. 90 Civ. 5638 (JFK), 1992 WL 296406, at *2-3 (S.D.N.Y. Oct. 7, 1992), to argue that service by mail is insufficient under the Hague Service Convention. Despite the attempt in Charas to distinguish Ackermann, id. at *2 n.2, and the circuit split on this issue, see, e.g., Brockmeyer v. May, 383 F.3d 798, 801-02 (9th Cir. 2004), the law in this Circuit continues to provide for service by mail under Article 10(a) of the Hague Service Convention. Burda Media, 417 F.3d at 300 ("The Hague Convention provides for several alternate methods of service: . . . (3) service by mail if the receiving state does not object . . . .").

[6] Defendants suggest that the second service was untimely because New York law requires service to be made within 120 days. N.Y. C.P.L.R. § 306-b. The second service, however, was made after the case was removed to federal court, and as defendants cite themselves, federal courts apply state law to determine the sufficiency of service in state actions before they are removed. Fed. Ins. Co. v. Tyco Int'l Ltd., 422 F. Supp. 2d 357, 383 (S.D.N.Y. 2006). Therefore, Rule 4(f) applies to the second service.

III. Failure to State a Claim

Koren claims that plaintiffs have failed to state a claim for their first cause of action for fraud.  When considering a motion to dismiss under Rule 12(b)(6), a trial court "must accept as true all the factual allegations in the complaint and draw all reasonable inferences in plaintiffs' favor."  In re Tamoxifen Citrate Antitrust Litig., 466 F.3d 187, 200 (2d Cir. 2006) (citation omitted).  It may "dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations" set forth therein.  Swierkiewicz v. Sorema N.A., 534 U.S. 506, 514 (2002) (citation omitted); see also McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184, 191 (2d Cir. 2007).  Although the focus should be on the pleadings, a court may also consider any written instrument attached to the complaint as an exhibit, "or any statements or documents incorporated in it by reference." Rothman v. Gregor, 220 F.3d 81, 88 (2d Cir. 2000) (citation omitted); see also Cortec Indus., Inc. v. Sum Holding L.P., 949 F.2d 42, 47-48 (2d Cir. 1991).

"Under New York law, to state a cause of action for fraud, a plaintiff must allege a representation of material fact, the falsity of the representation, knowledge by the party making the representation that it was false when made, justifiable reliance by the plaintiff and resulting injury."  Lerner v. Fleet Bank,

15

N.A., 459 F.3d 273, 291 (2d Cir. 2006) (citation omitted). Because plaintiffs' allegations relate to the decision to enter into the sales contract with Koren, plaintiffs' claims are characterized as alleging fraudulent inducement. Under New York law the elements of fraudulent inducement are: (1) a knowingly false representation of a material fact and (2) detrimental reliance thereon. Fax Telecommunicaciones Inc. v. AT&T, 138 F.3d 479, 490 (2d Cir. 1998). The false representation can be either a misrepresentation or the material omission of a fact. Lama Holding Co. v. Smith Barney Inc., 668 N.E.2d 1370, 1373 (N.Y. 1996). Reliance means "reasonable" reliance. Remington Rand Corp. v. Amsterdam-Rotterdam Bank, N.V., 68 F.3d 1478, 1484 (2d Cir. 1995).

    Plaintiffs have sufficiently alleged a cause of action for fraud. The complaint outlines the elements that need to be alleged for a fraud claim. Plaintiffs allege that Koren made representations regarding the history and business prospects of SpaceLogic, and that those representations materially affected their decision to purchase the shares. Plaintiffs also allege that those statements were false, because the history and business prospects were not as Koren represented, and Koren knew the statements were false since he was personally engaged in stealing from the company. Plaintiffs relied on Koren's representations during negotiations in late 2004 and 2005, after

16

Jaroslawicz was first introduced to Koren by an Israeli lawyer he had known for many years. Plaintiffs claim injury because they purchased, at a price of $250,000 and $349,000 each, shares in SpaceLogic which they would not have otherwise purchased.[7]

In support of his motion to dismiss, Koren claims that the statements alleged by plaintiffs are forward-looking statements or opinions, and that information about his personal affairs was not material. Some of Koren's statements that are alleged in the complaint, however, are not forward-looking statements or expressions of opinion, such as his representation that SpaceLogic had a legacy business and was doing $4-5 million a year in revenue, or that a contract with the TSA was imminent.

Koren next claims that the SpaceLogic Business Plan, which is attached as an exhibit to the complaint, gave plaintiffs "clear, direct and obvious warnings" which apply to Koren's alleged misrepresentations. A defendant may not be liable "if the alleged misrepresentations were sufficiently balanced by cautionary language within the same [document] such that no reasonable investor would be misled about the nature and risk of the offered security." P. Stolz Family Partnership L.P. v.

---

[7] Koren argues that plaintiffs have failed to allege damages, because common law fraudulent misrepresentation requires "a plaintiff in such a case show not only that had he known the truth he would not have acted but also that he suffered actual economic loss." Dura Pharms., Inc. v. Broudo, 544 U.S. 336, 343-44 (2005). In the complaint, however, plaintiffs claim that they were damaged because "Treeline expended $250,000 and Jaroslawicz expended $349,000."

Daum, 355 F.3d 92, 96 (2d Cir. 2004). Even consideration of the so-called "warnings" in the SpaceLogic Business Plan does not change the conclusion.

> Under the bespeaks caution doctrine, alleged misrepresentations in a stock offering are immaterial as a matter of law if it cannot be said that any reasonable investor could consider them important in light of adequate cautionary language set out in the same offering. When there is cautionary language in the disclosure, the Court analyzes the allegedly fraudulent materials in their entirety to determine whether a reasonable investor would have been misled. The touchstone of the inquiry is not whether isolated statements within a document were true, but whether defendants' representations or omissions, considered together and in context, would affect the total mix of information and thereby mislead a reasonable investor regarding the nature of the securities offered.

Rombach v. Chang, 355 F.3d 164, 173 (2d Cir. 2004) (citation omitted).

Koren points to the "Risk Analysis" section which lists warning language such as "General cost containment policies could result in reduction of the overall demand for the Company's product." This cautionary language does not address the representations about SpaceLogic's past performance or current negotiations with the TSA. With regard to the TSA contract, the Business Plan states that "the TSA has expressed an interest . . . . In partnership with the TSA, SpaceLogic is currently submitting a system design to a number of selected airports." Considering the allegations in the complaint that there was no legacy business and that Koren was stealing from

18

the company, the limited, cautionary language in the Business Plan does not require dismissal of the first claim.  Overall, plaintiffs have stated a cause of action for fraud.

IV. Failure to Plead Fraud with Particularity Under Rule 9(b)

Koren also argues that the plaintiffs have failed to plead their fraud claim with particularity.  Under Rule 9(b), "in all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity."  Fed. R. Civ. P. 9(b).  The Rule requires that a complaint "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." Lerner, 459 F.3d at 290.  Under Rule 9(b), "[m]alice, intent, knowledge, and other condition of mind of a person may be averred generally."  Fed. R. Civ. P. 9(b).  Nonetheless, "plaintiffs must allege facts that give rise to a strong inference of fraudulent intent."  Lerner, 459 F.3d at 290 (citation omitted).  The inference "may be established either (a) by alleging facts to show that defendants had both motive and opportunity to commit fraud, or (b) by alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness."  Id. at 290-91 (citation omitted).

Allegations of fraud contained in the complaint satisfy the heightened pleading requirement of Rule 9(b). Similar to the analysis above on the Rule 12(b)(6) issue, plaintiffs have detailed the fraudulent statements made by Koren during negotiations in late 2004 and 2005, and have explained that the statements were fraudulent by alleging the true state of SpaceLogic and Koren's activities. The complaint shows fraudulent intent by alleging that Koren was misappropriating money from the company for personal purposes.

## Conclusion

For the above reasons, defendants' motion to dismiss is denied, without prejudice to its renewal solely to address the existence of personal jurisdiction over Killy Koren after discovery.

SO ORDERED:

Dated:   New York, New York
         July 3, 2007

                                        *Denise Cote*
                                        DENISE COTE
                               United States District Judge